**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| In re: American Honda Motor Co., Inc., CR-V Vibration Marketing and Sales Practices Litigation, | Case No. 2:15-md-2661 |
| | Judge Michael H. Watson Magistrate Judge Deavers |
| This document relates to: ALL CASES | |

<u>**PLAINTIFFS' OPPOSITION TO MOTION TO COMPEL ARBITRATION**</u>

## I.  INTRODUCTION

American Honda Motor Company seeks to force Plaintiffs Fennes, Prychitko, Nonni, Hsi, and Bergendahl to arbitrate their claims against Honda regarding the 2015 CR-V's excessive vibration, despite the fact that Honda's warranty specifies that customers retain the right to bring such defect-related claims in court. In an attempt to contravene its own warranty terms, Honda relies on plaintiffs' purchase agreements with dealerships, and in the case of the Bergendahl plaintiffs, dealership repair invoices. But these dealership documents expressly limit their arbitration provisions to disputes between the consumer and the dealership, disclaim any agency relationship between the dealership and Honda, and explain that they do not incorporate Honda's warranty.  And a number of courts—including in cases involving Honda—have rejected arbitration motions in this context. *E.g.*, *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122 (9th Cir. 2013); *Soto v. Am. Honda Motor Co.*, 946 F. Supp. 2d 949 (N.D. Cal. 2012).

As those and other courts have explained, for a nonsignatory like Honda to be able to compel arbitration under the theory of equitable estoppel, plaintiffs' claims must be "intimately founded in" or "inextricably bound up with" the contract Honda seeks to enforce. *Kramer*, 705 F.3d at 1129. In other words, the requirement that claims depend on (or be inextricably bound up

1

with) the terms of the contract containing the arbitration provision is the "sine qua non" of imposing equitable estoppel. *See, e.g.*, *Machado v. System4 LLC*, 471 Mass. 204, 212, 216 (2015); *Goldman v. KPMG LLP*, 173 Cal. App. 4th 209, 213-14 (2011). Yet in this instance, *none* of plaintiffs' claims are bound up in their contracts with independent dealerships—the claims are based instead on Honda's design and manufacture of vibrating vehicles, Honda's concealment of that defect, and Honda's shifting warranty policies.

Honda makes much of the Complaint's purported allegations of concerted misconduct between Honda and its independent dealerships. In doing so, Defendant mischaracterizes the Complaint, which consistently identifies Honda—the designer, manufacturer, and warrantor—as solely responsible. But even if its characterization were accurate, "allegations of substantially interdependent and concerted misconduct by signatories and nonsignatories, standing alone, are not enough: the allegations of interdependent misconduct must be founded in or intimately connected with the obligations of the underlying agreement." *Kramer*, 705 F.3d at 1133. Because the Complaint does not rely on the purchase agreements or repair invoices for any of its claims, the conditions for equitable estoppel are not met, and Honda cannot compel plaintiffs to arbitrate under agreements to which it is not a party.

Finally, a further reason that Honda cannot enforce the dealerships' arbitration provisions is that the Magnuson-Moss Warranty Act ("MMWA") bars it from doing so. The MMWA limits the dispute resolution procedures that warrantors may offer to consumers: they may provide only an optional, informal, and non-binding dispute settlement procedure (which is exactly what Honda has done in its warranty). Plaintiffs' Ex. 1 at 00879-922. Honda's attempt to use the binding arbitration provisions in the dealerships' contracts, when its own warranty contains a non-binding

arbitration option instead, is a transparent effort to evade the language of the MMWA and its implementing regulations. This Court should not permit it.

## II.     SUMMARY OF RELEVANT DOCUMENTS

Honda attached as exhibits to its motion the purchase agreements that all six plaintiffs entered into with independent Honda dealerships where they bought their 2015 CR-Vs, as well as two dealership repair invoices for repairs performed on the Bergendahls' CR-V. These agreements contain similar language with respect to three areas of central importance: (1) Honda's lack of rights and obligations under the agreements; (2) the parties subject to the obligation to arbitrate; and (3) the agreements' non-inclusion of warranty coverage.

On the first point, the Fennes purchase agreement states in its Definitions section:

> "Dealer," "us," "our," and "we" mean or refer to the authorized Dealer named on the face of this Order and Agreement and who becomes a party to this Order and Agreement by accepting It. "Manufacturer" means the corporation that manufactured the Vehicle or its designated distributor. We are not the Manufacturer's agent. You and we are the sole parties to this Order and Agreement.

Honda's Ex. A at FENNES 000012. The Prychitko purchase agreement contains similar language in its "Definitions and Relationship" section, including the disclaimer of an agency relationship between the dealership and Honda and a stipulation that the buyer and dealership are the only parties to the agreement. Honda's Ex. B at PRYCHITKO 000005. The Nonni purchase agreement, while not overtly writing the manufacturer out of the agreement as the Fennes and Prychitko agreements do, also identifies itself as an "agreement between the dealer and purchaser." Honda's Ex. C at NONNI 000001. Meanwhile the Hsi purchase agreement, which is very much focused on terms regarding sales on credit, emphasizes the terms of financing and repayment and refers to the parties as "buyer" and "seller" or "creditor." *See* Honda's Ex. F.

3

On the second point, the parties required to arbitrate, the exclusion of Honda as a covered party continues. The Bergendahls' purchase agreement says nothing about arbitration, *see* Honda's Ex. I, but the arbitration provisions in their repair invoices apply only to "dispute[s] between customer and the dealership." Honda's Ex. D at BERGENDAHL 000014-15; Ex. E at BERGENDAHL 000011-13; *see also* Ex. C at NONNI 000001 ("Purchaser and Dealer hereby agree . . . to submit any claim arising out of or related to this Motor Vehicle Purchase Contract . . . for binding arbitration . . . .").

The identically worded arbitration provisions in the Fennes, Prychitko, and Hsi agreements are also distinctly binary in character, saying "either you or we may choose to arbitrate"; discussing any claim "you may have against us"; contemplating disputes "between you and us or our employees, agents, successors or assigns"; discussing any "rights that you and we would have in court"; and concluding that arbitration can be initiated "at your or our election." Honda's Ex. A at FENNES 000013; Ex. B at PRYCHITKO 000005; Ex. F at p. 7.

On the third point, the same theme of limiting the agreements' scope to purchasers and dealerships—and excluding Honda, as the manufacturer—repeats itself in the context of the warranties. Except for the Nonni agreement (in which the dealerships provide statutory warranties pertinent to Maine and Massachusetts, Honda's Ex. C at NONNI 000002), all of the purchase agreements state that the dealership is providing the vehicle "as is," and with "no warranties, express or implied." Honda's Ex. A at FENNES 000010; Ex. B at PRYCHITKO 000005 (disclaiming all warranties); Ex. F at p.5 ("the Seller makes no warranties, express or implied"); *see also* Ex. E at BERGENDAHL 000011-13 ("[t]he Seller hereby expressly disclaimers [sic] all warranties either express or implied…."). These warranty disclaimers are followed by statements carving out Honda's manufacturer's warranty as separate from, and not governed by, the purchase

4

agreements. *See* Honda's Ex. A at FENNES 000010 ("This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide."); Ex. F at p. 5 (same). And the Prychitko purchase agreement goes even further, emphasizing that the "manufacturer's warranty [is] between buyer and manufacturer only." Honda. Ex. B at PRYCHITKO 000005.

That separate manufacturer's warranty from Honda contains a totally distinct informal dispute resolution program—a three-step procedure under the heading "Customer Satisfaction." Plaintiffs' Ex. 1 at PLAINTIFFS 000883-84. After directing consumers to discuss concerns with dealership management (step 1), or by writing to or calling Honda customer service (step 2), Honda allows consumers to contact the National Center for Dispute Settlement, which "resolve[s] disputes between vehicle manufacturers and their customers." *Id.* Any decision by NCDS is "not binding." *Id.* Honda's warranty makes clear that the NCDS procedure is optional and that customers may bring disputes against Honda to court instead of, or after, going through the NCDS: "If you want to go to court, we do not require you to first file a claim with NCDS. . . . If you do not accept the decision of NCDS, you can still go to court." *Id.*

## III. ARGUMENT

### A. The Arbitration Provisions at Issue Do Not Cover Honda.

"Arbitration [under the FAA] is a matter of consent," for the FAA's primary purpose is to ensure "that private agreements to arbitrate are enforced according to their terms." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989). Based on "the contractual nature of arbitration," the U.S. Supreme Court has also held that "parties may specify with whom they choose to arbitrate their disputes." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 683 (2010). As discussed above, the relevant purchase agreements and

invoices all limit the parties to their arbitration provisions to the consumer and the dealership. Enforcing the agreements according to their terms would exclude Honda.

Although Honda points to language referring to "relationship[s] with third parties who did not sign this agreement," Motion at 14, Honda takes the phrase out of context. *See, e.g.*, *Soto*, 946 F. Supp. 2d at 955 (N.D. Cal. 2012) (rejecting Honda's interpretation of a similar arbitration clause). The sentence containing this phrase about third parties begins by reiterating whose disputes are arbitrable: "Any claim or dispute . . . between you and us or our employees, agents, successors or assigns." *E..g.*, Honda's Ex. A at FENNES 000013. The predicate of the sentence also names the parties that may compel arbitration: disputes "shall, **at your or our election**, be resolved in neutral, binding arbitration." *Id.* (emphasis added). The middle of the sentence, from which Honda selectively quotes, describes the types of disputes subject to arbitration and includes within that list "any resulting transaction or relationship (including any such relationship with third parties who do not sign this Order and Agreement)." *Id.* Read together with the language about successors and assigns earlier in the sentence, this language suggests that if the purchaser or dealership later assign their rights under the contract to another entity, that entity could invoke the arbitration provision despite not having signed it. But as to the plaintiffs' relationship with Honda, as another court has recognized, "this clause is inapposite. AHM's relationship with [plaintiffs] began at the moment [they] bought [their CR-Vs], and thus could not be a 'resulting' relationship that occurred afterward." *Soto*, 946 F. Supp. 2d at 955. Instead, this type of clause is better "understood to refer to a secondary sale of the car, and not the relationship with the manufacturer AHM." *Id.*

Honda also reaches beyond the four corners of the Bergendahl invoices in an effort to establish a tripartite agreement "between and among the Bergendahls, the dealership, and AHM"

6

based on the fact that the repairs the dealership made were developed and paid for by Honda. Motion at 10. But while Defendant may have separate agreements with Honda dealerships requiring them to make certain repairs covered by Honda's warranties, the Bergendahl invoices do not contain any such terms. Instead, they contain arbitration provisions that, similar to the purchase agreements, specify the parties as "customer and the dealership." Honda's Ex. D-E at BERGENDAHL 000011-15. Moreover, to the extent that the Bergendahls had any disputes with Honda regarding the 2015 dealership repair work, those disputes would have been subject to the separate and non-binding dispute resolution procedures set forth in Honda's warranty. Plaintiffs' Ex. 1 at PLAINTIFFS 000883-84.

**B.      The Federal Policy Favoring Arbitration Does Not Apply Here, and Arbitrability Is a Question for this Court, Not an Arbitrator.**

Defendant conflates two doctrines: (1) the sometimes-applicable federal policy favoring arbitration, which may require ambiguities to be construed in favor of arbitration; and (2) that parties may delegate threshold issues of arbitrability to an arbitrator. Motion at 11-12. Neither of these doctrines has any bearing here.

First, because the question here is whether any agreement to arbitrate exists at all between the plaintiffs and Honda, the federal policy favoring arbitration places no thumb on the scale in answering that question. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 302 (2010); *see also Kramer*, 705 F.3d at 1126 ("The strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement.") (quotation omitted); *Datatreasury Corp. v. Wells Fargo & Co.*, 522 F.3d 1368, 1372 (Fed. Cir. 2008) ("Federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties; instead ordinary contract principles determine who is bound.").

Second, disputes over whether an agreement to arbitrate was ever formed between two parties, like other disputes going to the existence of a contract, are threshold issues that are for a court to decide and should not be delegated to an arbitrator. *See Granite Rock*, 561 U.S. at 299-300.

The Ninth Circuit has analyzed the delegation question in a case with strikingly similar facts to this one and reached the conclusion that the plaintiffs advocate here. In *Kramer v. Toyota Motor Corp.*, a class of purchasers of 2010 Toyota Priuses brought state law claims against Toyota for failing to disclose defects with the Prius's antilock braking system, and continuing to sell the 2010 Prius after learning of the defects. 705 F.3d at 1124. Toyota sought to enforce arbitration provisions in the purchase agreements between the plaintiffs and the dealerships where they bought their Priuses, despite not being a signatory to those agreements. *Id.* at 1024-25. Although the arbitration provisions in the purchase agreements contained broad language delegating issues of arbitrability to an arbitrator, similar to the language that Honda cites in this case, the Ninth Circuit found that the district court was still the proper decision maker to address the question of whether Toyota could enforce the agreements:

> While Plaintiffs may have agreed to arbitrate arbitrability in a dispute with the Dealerships, the terms of the arbitration clauses are expressly limited to Plaintiffs and the Dealerships. For example, Scholten's arbitration clause states that "[e]ither you or we may choose to have any dispute between you and us decided by arbitration." The language of the contracts thus evidences Plaintiffs' intent to arbitrate arbitrability with the Dealerships and no one else.

*Id.* at 1127; *see also In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Products Liab. Litig.*, 838 F. Supp. 2d 967, 983-85 (C.D. Cal. 2012) (holding that the court should decide whether Toyota could compel arbitration of plaintiffs' claims based on agreements with their dealerships); *Soto v. Am. Honda Motor Co.*, 946 F. Supp. 2d 949, 954 (N.D. Cal.

8

2012) (same). Just as in prior cases where vehicle manufacturers tried unsuccessfully to enforce dealership arbitration clauses, the Court should decide arbitrability.

C. **Honda May Not Force the Plaintiffs to Arbitrate Their Claims Under the Doctrine of Equitable Estoppel.**

The question of whether a non-signatory such as Honda may enforce the arbitration provision in another's contract is to be decided in accordance with "traditional principles of state law" such as "assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (internal quotation marks omitted) (citing 21 R. Lord, Williston on Contracts § 57:19, p. 183 (4th ed. 2001)). But this directive does not specify whether the contract law of any particular state, such as the plaintiff's state of residence, must be followed, and some courts have interpreted *Carlisle*'s holding "as affirming the federal nature of the estoppel question, but only to the extent that the federal law tracks traditional principles of state law that arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." *Kingsley Capital Mgmt, LLC v. Sly*, 820 F. Supp. 2d 1011, 1023 (D. Ariz. 2011).[1] Plaintiffs therefore cite both federal and state law on the issue of equitable estoppel, which will show that the law in California, Florida,

---

[1] While some of the purchase agreements on which Honda relies include choice of law provisions, e.g., Honda's Ex. A at FENNES 000013 (stating that federal and Florida law apply); Ex. C at NONNI 000002 (providing that Massachusetts law applies); Ex. F at p. 7 (stating that federal and California law apply), the plaintiffs deny that these agreements, which pertain only to relationships and disputes between the plaintiffs and the dealerships, apply to the instant dispute with nonsignatory Honda. If these agreements do not apply to the instant dispute, then their choice of law provisions are irrelevant. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014). For the same reason, this Court should not consider the provision in the Nonni purchase agreement granting exclusive jurisdiction to the Norfolk County Superior Court in Dedham, Massachusetts. Honda's Ex. C at NONNI 000002.

Massachusetts, Michigan, and Oregon is consistent with the larger nationwide consensus that this equitable doctrine is not implicated by the facts here.

The concept of equitable estoppel has long been recognized under state law. *See, e.g.*, *Day v. Advanced M & D Sales, Inc.*, 336 Or. 511, 518-19 (2004); *Bongaards v. Millen*, 440 Mass. 10, 15 (2003). Equitable estoppel prevents a party from claiming benefits under a contract while simultaneously seeking to repudiate unfavorable terms of the same contract. *See Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000). "The lynchpin for equitable estoppel is equity, and the point of applying it to compel arbitration is to avoid a situation that would fly in the face of fairness." *Hill v. G E Power Systems, Inc.*, 282 F.3d 343, 349 (5th Cir. 2002) (internal quotations omitted).

Honda suggests that it can avail itself of the equitable estoppel doctrine here because (i) the Complaint presumes the existence of the agreements containing arbitration clauses, (ii) those agreements impose obligations on Honda, and (iii) the plaintiffs allege substantially interdependent and concerted misconduct between Honda and the dealerships. Motion at 13-15. The first of these arguments misstates the law, the second misstates the facts, and the third misstates both.

### 1.  Plaintiffs Do Not Seek Benefits Under or Rely Upon Terms in the Contracts.

Honda argues that equitable estoppel applies because the Complaint presumes the existence of the agreements containing arbitration clauses.  But that is not the correct legal standard.  The Sixth Circuit (along with several other jurisdictions) finds equitable estoppel only where a party seeks benefits under the same contract that contains the arbitration provision. *See Javitch v. First Union Securities, Inc.*, 315 F.3d 619, 629 (6th Cir. 2003) (explaining that nonsignatories may be compelled to arbitrate when they seek direct benefits under the contract, and that signatories like

plaintiffs may be compelled to arbitrate when they seek indirect benefits under the contract); *accord In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 191-94 (Tex. 2007); *Ahlers v. Ryland Homes Nevada*, 367 P.3d 743, 2010 WL 3276221, at *2 (Nev. Apr. 16, 2010) (unpublished table decision).

Even outside the Sixth Circuit, where courts apply a somewhat broader test; equitable estoppel applies only if the signatory's claims rely on or are "intimately founded in and closely related to" the agreement containing the arbitration provision. *See, e.g.*, *Machado*, 471 Mass. at 213-15 (finding plaintiffs equitably estopped from refusing to arbitrate under franchise agreements where analyzing the terms of those agreements was essential to the merits of plaintiffs' claims of misclassification as independent contractors); *Boyd v. Homes of Legend, Inc.*, 981 F. Supp. 1423, 1433 (M.D. Ala. 1997) (holding that equitable estoppel is proper where "adjudication of the disputes between the signatory and nonsignatory parties would require interpretation, and probably enforcement, of the specific terms and conditions of the underlying contract"); *Hughes Masonry Co. v. Greater Clark Cty. Sch. Bldg. Corp.*, 659 F.2d 836, 841 and n. 9 (7th Cir. 1981) ("Hughes must rely on the terms of the Hughes-Clark agreement in its claims against J.A. Hence, Hughes is estopped from repudiating the arbitration clause of this agreement, upon which it relies.").

Virtually none of the cases applying equitable estoppel on behalf of nonsignatories, and certainly none in any of the plaintiffs' states of residence, found it sufficient that the claims "make reference to" or "presume the existence of" the agreements containing the arbitration provisions, without also relying on their terms. Indeed, the California Supreme Court has rejected the very logic that Honda tries to apply here—that without the agreements, there would be no claims. *Goldman v. KPMG LLP*, 173 Cal. App. 4th at 218 ("merely making reference to an agreement with an arbitration clause is not enough"); *see also Machado*, 471 Mass. at 215 (distinguishing

between mere factual significance of agreement or "but-for" relationship of agreement to claims, which was insufficient to establish equitable estoppel, and a situation where the plaintiffs had to rely on the terms of the agreement to prove their claims); *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 449 Fed. App'x 704, 709 (10th Cir. 2011) (per curiam) ("For a plaintiff's claims to rely on the contract containing the arbitration provision, the contract must form the legal basis of those claims; it is not enough that the contract is factually significant to the plaintiff's claims or has a 'but-for' relationship with them.").

Honda boasts that "numerous courts" have allowed vehicle manufacturers to enforce the arbitration provisions of dealerships against consumers on equitable estoppel grounds, but could only point to two unpublished opinions that did so: *Agnew v. Honda Motor Co., Ltd.*, 2009 WL 1813783 (S.D. Ind. May 2, 2009) from the Southern District of Indiana and *Ford Motor Co. v. Ables*, 207 F. App'x 443, 448 (5th Cir. 2006) from the Fifth Circuit. Motion at 15-16. At least as many courts have refused to adopt this theory when Honda or its current attorneys have offered it, and the cases rejecting equitable estoppel in this context are both more recent and more consistent with the weight of authority.

In *Kramer*, for instance, the Ninth Circuit held that vehicle purchasers' claims that Toyota failed to warn of a defect did not rely on and were not intertwined with the dealerships' purchase agreements. *Kramer*, 705 F.3d at 1130. The *Kramer* plaintiffs' warranty claims arose "independently from the Purchase Agreements, rather than intimately relying on them." *Id.* Finally, the court rejected Toyota's argument that because the plaintiffs sought damages for their Priuses' diminution in value, they had referenced the price term of the Purchase Agreements, noting, in contrast to the court in A*gnew*, 2009 WL 1813783, at *4-5, that "mere reference to a term in the Purchase Agreement is not enough" to establish equitable estoppel where the plaintiffs

12

"do not seek to enforce or challenge the terms, duties or obligations of the Purchase agreements." *Kramer*, 705 F.3d at 1132. Similar analysis can be found in *Soto*, in which both the defendant and its counsel are the same as in this case. The *Soto* court found no equitable estoppel because the plaintiffs' defect claims about their Honda vehicles arose from the manufacturer's warranty and marketing materials, and not the dealership sales contract (which discussed insurance and financing and explicitly disclaimed any warranties). *Soto*, 946 F. Supp. 2d at 955-56.

Here, as in *Kramer* and Soto, the plaintiffs do not rely on any terms of the purchase agreements with the dealerships or, in the case of the Bergendahls, on the terms of the dealership repair invoices, in advancing their claims against Honda. Although plaintiffs did, of course, buy their vehicles at independent Honda dealerships, the fact of purchase alone is not enough to establish the close connection between agreement and claims necessary to support a finding of equitable estoppel. *See Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1231 (9th Cir. 2014) ("[T]he customer agreement proves at most the existence of a transaction; Plaintiffs' claims do not depend on the Agreement's terms."). Nor would this Court need to "read, let alone interpret or enforce," any terms of the purchase agreements or repair invoices in order to fully adjudicate the plaintiffs' warranty, fraud, and state consumer law claims against Honda. *See Boyd*, 981 F. Supp. at 1433 (abrogated on other grounds by *Davis v. Southern Energy Homes, Inc.*, 305 F.3d 1268 (11th Cir. 2002)). The fact of purchase from a Honda dealership could just as easily be established through the plaintiffs' sales receipts, bank statements, or testimony, and nothing else about the purchase agreements has any bearing on the plaintiffs' claims.

Defendant also suggests that because Honda has obligations to repair vehicles covered by its warranties, it may compel arbitration under *Geier v. m-Qube Inc.*, 2016 WL 3034064, at *3 (9th Cir. May 26, 2016). Motion at 14. But the purchase agreements do not impose these obligations

13

on Honda; rather, they take pains to point out that any manufacturer's warranties are separate from and not incorporated into those agreements. Honda's Ex. A at FENNES 000010; Ex. B at PRYCHITKO 000004-05; Ex. F at p. 5. And while the Bergendahl invoices mention a "factory warranty," Honda's Ex. D-E at BERGENDAHL 000011-15, this is hardly equivalent to the sort of explicit obligation to a nonsignatory detailed in *Geier*, where one party to the contract waived claims she would otherwise have against the other party's suppliers. 2016 WL 3034064, at *3.

Nor need the Bergendahls or any other plaintiffs rely on the terms of these invoices to establish claims against Honda, especially when a far more robust explanation of Honda's warranty obligations to purchasers—and relationships with dealerships—can be found within Honda's warranty. Plaintiffs' Ex. 1 at PLAINTIFFS 000879-922. In short, as in *Kramer*, the plaintiffs here "do not seek to simultaneously invoke the duties and obligations of [Honda] under the Purchase Agreement[s], as it has none, while seeking to avoid arbitration." 705 F.3d at 1134. Accordingly, "the inequities that the doctrine of equitable estoppel is designed to address are not present." *Id.*

### 2. Allegations of Interdependent and Concerted Misconduct Alone Are Insufficient to Support a Finding of Equitable Estoppel.

Some courts, including the Fifth and Eleventh Circuits, have recognized a second basis for allowing nonsignatories to compel arbitration under the umbrella of equitable estoppel: when the signatory alleges "'substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.'" *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2002) (quoting *MS Dealer Serv. Corp. v. D. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)). Honda seizes on this language to posit that because the Complaint states that both Honda and its dealerships failed to disclose the 2015 CR-V's vibration

14

problems, or that dealerships for a time did not provide warranty repairs, the plaintiffs have alleged substantially interdependent and concerted misconduct between Honda and the dealerships and must be equitably estopped into arbitrating with Honda. Motion at 20-22. This conclusion is both legally and factually flawed.

As a legal matter, multiple circuits, including the Ninth Circuit in *Kramer v. Toyota*, and the Eleventh Circuit where *MS Dealer* originated, have clarified that the interdependent and concerted misconduct theory of equitable estoppel is limited. Like the reliance-on-terms theory discussed in the previous section, the interdependent and concerted misconduct theory is limited to situations where plaintiffs' claims are "intimately founded on and intertwined with the obligations imposed by" the contract containing the arbitration clause. *MS Dealer*, 177 F.3d at 948 (explaining that the complaint alleged a conspiracy between the nonsignatory and signatory to charge an excessive fee for a service contract, where that fee was included in the Buyer's Order containing the arbitration clause); *Kramer*, 705 F.3d at 1133 ("allegations of substantially interdependent and concerted misconduct by signatories and nonsignatories, standing alone, are not enough"); *see also In re Grocery Products Antitrust Litig.*, 707 F.3d 917, 924 n.8 (8th Cir. 2013) (holding that reliance on terms of the contract is necessary to establish equitable estoppel and that *MS Dealer* does not support an alternative theory based only on allegations of concerted misconduct between a signatory and non-signatory independent of the contract's terms); *In re Humana Inc. Managed Care Litig.*, 285 F.3d 971, 976 (11th Cir. 2002) (denying equitable estoppel in RICO action, analyzing *MS Dealer*'s concerted misconduct language, and concluding that "the plaintiff's actual dependence on the underlying contract in making out the claim against the nonsignatory defendant is therefore always the sine qua non of an appropriate situation for

15

applying equitable estoppel"), *rev'd on other grounds* by *PacifiCare Health Systems, Inc. v. Book*, 538 U.S. 401 (2003)).

As established in the previous section, none of the plaintiffs' claims depend on the terms of the purchase agreements or repair invoices, and thus they do not meet the "intimately founded on and intertwined with" standard of *MS Dealer*. And in any event, the Complaint never alleges concerted misconduct between Honda and its dealerships. Rather, the Complaint makes clear that it was Honda that redesigned the 2015 CR-V, Honda that discovered the resultant severe vibration, and Honda that chose not to mitigate the vibration because doing so would have reduced fuel efficiency or required expensive changes. Complaint at ¶¶ 2-3, 27-40. The Complaint also emphasizes that it was "Honda [that] chose instead to sell the CR-V as is—with the extreme vibration," *id.* at ¶ 4, and Honda that never "instruct[ed] or authorize[d] its dealerships" to warn customers about the problem. *Id.* at ¶ 43. It is Honda who sets warranty policy—not dealerships—and it was Honda that transitioned from initially denying warranty coverage to later funding the cost of repairs. *Id.* at ¶¶ 54-55. In sum, while any particular dealership may have some limited sense that there is a problem with a model, dealerships have nowhere near the same level of design and manufacturing knowledge as Honda or access to the various streams of aggregate data to which Honda is privy—the dealerships ultimately rely on Honda to be told when a problem exists and whether to cover it under warranty. *Id.* at ¶41.

The allegations in the plaintiffs' Complaint—namely, that dealerships had less information than Honda about the defect at issue and took direction from Honda about how to respond—depart markedly from the allegations that were found to constitute interdependent and concerted misconduct in *Orcutt v. Kettering Radiologists*, a case relied on by Honda. In *Orcutt*, the plaintiff "sought to hold [the nonsignatory] jointly and severally liable for all of the conduct of [the

16

signatory,] including the alleged discrimination, harassment, retaliation, and breach of contract."
*Orcutt*, 199 F. Supp. 2d 746, 753 (S.D. Ohio 2002). Such intertwined claims against signatory and
nonsignatory are simply not present here.

> **D.      The Magnuson-Moss Warranty Act Does Not Permit Mandatory and**
>
> **Binding Arbitration.**

A second independent reason, beyond its non-signatory status, also prevents Honda from
availing itself of the arbitration provisions in the dealerships' purchase agreements and invoices.
Because Honda has provided purchasers of its vehicles with a written warranty, it is a "warrantor"
within the meaning of the MMWA. 15 U.S.C. § 2301(5). And the MMWA expressed a
Congressional policy of "encourag[ing] warrantors to establish procedures whereby consumer
disputes are fairly and expeditiously settled through informal dispute settlement mechanisms" and
charged the Federal Trade Commission ("FTC") with promulgating rules to govern such informal
mechanisms." 15 U.S.C. § 2310(a)(1)-(2). Pursuant to its rulemaking authority, the FTC has
provided that the terms of any informal dispute resolution procedure that a warrantor develops
must be set out "in a single document," along with other information about its warranty, in "in
simple and readily understood language." 16 C.F.R. § 701.3(a). The single document in which
Honda purported to provide this required information to purchasers of the 2015 CR-V was its
warranty. The purchase agreements do not contain information about Honda's warranty; to the
contrary, they specifically point out that the manufacturer's warranty is separate. *See, e.g.*, Honda's
Ex. B at PRYCHITKO 000004-05. Thus Honda's attempt to rely on the dispute resolution
provisions in the purchase agreements and invoices is a violation of the MMWA's single document
rule. *See Larrain v. Bengal Motor Co. Ltd.*, 976 So. 2d 12, 14 (Fla. Dist. Ct. App. 2008) (refusing

to enforce dealership's stand-alone arbitration clause because it was not contained in same document with all other warranty terms).

The arbitration provisions in the dealerships' purchase and repair agreements violate the MMWA in another way as well: they are binding and prevent consumers from going to court or participating in a class action. *See, e.g.*, Honda's Ex. A at FENNES 000013; Ex. C at NONNI 000002. By contrast, the MMWA provides that any informal dispute resolution procedure developed by a warrantor must be offered as a precondition, not an alternative, to pursuing individual or class claims in court. *See* 15 U.S.C. § 2310(a)(3)(C) (stating that if a warrantor chooses to establish an informal dispute resolution procedure, then consumers may not "commence a civil action" or "proceed in a class action" against that warrantor until they have exhausted their remedies under the informal dispute resolution procedure). The FTC has stated the prohibition even more plainly: "[t]he mechanism shall inform the consumer . . . that [i]f he or she is dissatisfied with its decision or warrantor's intended actions, . . . legal remedies may be pursued" and "[d]ecisions of the mechanism shall not be legally binding on any person." 16 C.F.R. § 703.5(g), (j); *see also* 80 Fed. Reg. 42710, 42718 (July 20, 2015) (FTC reaffirming its conclusion, first made in 1975, that "reference within the written warranty to any binding, non-judicial remedy is prohibited by the Rule and the [Magnuson-Moss] Act.") (quoting 40 Fed. Reg. 60168, 60211 (Dec. 31, 1975)).

Two courts in the Sixth Circuit have interpreted the MMWA and its implementing regulations to bar mandatory arbitration of consumer claims against warrantors. In *Rickard v. Teynor's Homes, Inc.*, 279 F. Supp.2d 910 (N.D. Ohio 2003), the court denied a motion to dismiss or compel arbitration brought by a seller of a mobile home against a buyer who had filed claims under the MMWA as well as Ohio consumer protection laws. After discussing the history and

18

purposes of the MMWA and the principles of deference to agency interpretation of statutes under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984), the court concluded that the FTC's position prohibiting binding arbitration of warranty claims was reasonable and entitled to deference. *Rickard*, 279 F. Supp. 2d at 919-921.[2] It added that because the FAA was initially intended to apply to disputes between sophisticated commercial parties, the "liberal policy [favoring arbitration under the FAA] should not encroach on or undermine the manifest pro-consumer policy of the MMWA." *Id.* at 921. *See also Lewis v. Epic Systems Corp.*, No. 15-2997, 2016 WL 3029464, at *6 (7th Cir. May 26, 2016) (holding that the FAA and the National Labor Relations Act could be harmonized where they had distinct scopes and purposes and overlapped one another rather than irreconcilably conflicting). Four years later, a court in this district conducted a similar analysis and reached the same conclusion, that "the MMWA precludes enforcement of binding arbitration agreements for claims under a written warranty." *Higgs v. Warranty Group*, No. C2-02-1092, 2007 WL 2034376 (S.D. Ohio July 11, 2007).

This Court should follow the reasoning of *Rickard* and *Higgs* and bar Honda from enforcing the binding arbitration provisions in the dealerships' agreements, which contrast sharply with the optional dispute resolution procedure in its own warranty. All of the plaintiffs' claims involve and rely on Honda's written warranty, and so on this basis none of them are arbitrable. At a minimum, Honda should be barred from compelling arbitration of the claims under the first cause of action, which explicitly invokes the MMWA.

---

[2] *Rickard* limited its holding to claims brought pursuant to written warranties and did not bar arbitration of the plaintiffs' state consumer law claims. 279 F. Supp.2d at 921. Nothing in the MMWA or the FTC regulations mandates such a limitation, as the requirement that informal dispute resolution procedures be included in written warranties applies to "warrantors" and "consumer disputes," not just to disputes brought under the MMWA. *See* 15 U.S.C. § 2310(a).

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Honda's motion to compel arbitration and to stay this action. If the Court does grant Honda's motion with respect to any of the plaintiffs, then it should dismiss those plaintiffs' claims without prejudice so they may pursue an appeal.

DATED: July 15, 2016                    Respectfully submitted,

                                         /s/ *David K. Stein*

                                        David K. Stein (*pro hac vice*)
                                        Eric H. Gibbs (*pro hac vice*)
                                        Caroline Corbitt (*pro hac vice*)
                                        **GIBBS LAW GROUP LLP**
                                        505 14th Street, Suite 1110
                                        Oakland, California 94612
                                        Telephone: (510) 350-9700
                                        Facsimile: (510) 350-9701
                                        ds@classlawgroup.com
                                        ehg@classlawgroup.com
                                        ccc@classlawgroup.com

                                        *Interim Lead Counsel*

                                        Mark H Troutman  (0076390)
                                        Gregory M Travalio (0000855)
                                        Shawn Judge (0069493)
                                        **ISAAC WILES BURKHOLDER & TEETOR LLC**
                                        Two Miranova Place, Suite 700
                                        Columbus, Ohio 43215
                                        Telephone:     (614) 221-2121
                                        Facsimile:     (614) 365-9516
                                        mtroutman@isaacwiles.com
                                        gtravalio@isaacwiles.com
                                        sjudge@isaacwiles.com

                                        *Liaison Counsel*

Karla Gilbride (*pro hac vice*)
**PUBLIC JUSTICE, P.C.**
1620 L Street NW, Suite 630
Washington, DC 20006
Telephone:      (202) 861-5241
Facsimile:       (202) 232-7203
kgilbride@publicjustice.net


## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2016, a copy of the foregoing was filed electronically.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system.


 /s/ *David K. Stein*_____
David K. Stein (*pro hac vice*)
*Interim Lead Counsel*